UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL STEWART,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL FINANCE, INC., et al.,<br><br>    Defendants. | No. 2:18-cv-01844 KJM CKD (PS)<br><br>ORDER |

On October 17, 2018, the undersigned held a hearing on defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (ECF No. 14; see ECF No. 17.) Plaintiff appeared pro se, and James Ramos and Brett Goodman appeared telephonically on behalf of defendants. At the close of the hearing, the court took the matter under submission.

I.    Legal Standard

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

////

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

II.     The Complaint

Plaintiff asserts multiple state and federal claims against defendant financial entities relating to the foreclosure sale of real property at 256 Shilling Avenue in Lathrop, California. (ECF No. 1 ("Cmplt").)

In 2002, plaintiff executed a loan agreement ("Loan") with defendant American General Finance in the amount of $141,451.15, secured with a Deed of Trust ("DOT") that was subsequently reassigned multiple times. (Cmplt, ¶ 38; see ECF No. 15-1, Defs. Exh. A; Corporate Assignments of Deed of Trust, Defs.' Exhs. B & C.)[1] Between 2003 and 2017, plaintiff received five Notices of Default on the subject Loan. (See Defs' Exhs. D, E, F, G & H.) In 2013, plaintiff entered a Loan Modification Agreement with defendant Springleaf Financial Services. (Defs' Exh. I) Plaintiff alleges that between August and October 2013, he made "three

---

[1] Defendants' request for judicial notice of the publicly recorded documents submitted as Defendants' Exhibits A-J is granted. (ECF No. 15.) Under Rule 12(b)(6), the court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Gailbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002). See Fed. R. Evid. 201(b); Gamboa v. Tr. Corps, No. 09-0007 SC, 2009 WL 656285, at *3 (N.D. Cal. Mar. 12, 2009) (taking judicial notice of a Deed of Trust and adjustable rate mortgage note, when ruling on a motion to dismiss because "These documents are central to Plaintiffs' allegations that Defendants were not entitled to initiate a foreclosure sale of their property. These documents are also part of the public record and are easily verifiable").

agreed-upon trial period loan modification payments" of $997.00.  (Cmplt., ¶ 81; see Plff's Exh. J at 117.)  Plaintiff then "discovered discrepancies in the Loan Modification Agreement" and "disputed the figures upon which [it] was based."  (Id., ¶ 82.)  He repeatedly attempted to work with Springleaf Financial Services to "resolve the discrepancy and set up a new or amended Loan Modification Agreement," but while Springleaf continued to accept payments on the loan, it never agreed to a new loan modification.  (Id., ¶ 83.)  In 2017, plaintiff was notified that he was again in default.  (Defs' Exh. H.)  In October 2017, nine months after the final Notice of Default, the property was sold to a third party in a foreclosure sale.  (Cmplt., ¶ 49; Defs Exh. J.)

The gravamen of the complaint is that the Loan was improperly assigned, such that the subsequent foreclosure on the property was unlawful.  (See Cmplt., ¶¶ 41-42, 48.)  Plaintiff alleges that the assignment of the Loan was void because defendants "failed to adhere to the PSA [Pooling and Servicing Agreement]$^2$, which requires that Plaintiff's Note and Deed of Trust be properly endorsed, transferred, accepted and deposited with the securitized trust . . . on or before the 'closing date' indicated on the Prospectus."  (Id., ¶ 42; see ¶¶ 45-48.)

Plaintiff further alleges that the note and Deed of Trust were not transferred together, a failure that has "resulted in an unperfected lien that none of the Defendants can enforce in any manner whatsoever."  (Id., ¶¶ 46-48.)  "Plaintiff alleges that, prior to demanding mortgage payments [from] Plaintiff, none of the defendants . . . had, nor presently have, a secured or unsecured . . . interest in Plaintiff's Note and/or Deed of Trust as required by California law – irrespective of who is actually in physical possession of plaintiff's Note."  (Id., ¶ 68.)

III.   Motion to Dismiss

In their Rule 12(b)(6) motion, defendants argue that plaintiff's conclusory allegations are insufficient to state a claim.  Before reaching the claim elements however, defendants argue as a threshold issue that plaintiff lacks standing to challenge the allegedly faulty loan assignments that underpin his claims.

---

$^2$ Briefly, when a mortgage lender sells pools of mortgages in the mortgage securitization process, "[t]he terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement ('PSA')."  Yvanova v. New Century Mortgage Corp., 62 Cal. 4th 919, 943, n.5 (2016) (citation omitted).

A. Standing

"The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" Labyrinth Optical Techs. LLC v. Alcatel-Lucent USA, Inc., 2015 WL 8227494, at *2 (C.D. Cal. Mar. 23, 2015), citing United States v. Hays, 515 U.S. 737, 742 (1995). Whether a party has standing to sue is a question of law. Id., citing Prima Tek II L.L.C. v. A–Roo Co., 222 F.3d 1372, 1376 (Fed. Cir. 2000). "A plaintiff generally has the burden of proving standing to sue." Id., citing Tyco Healthcare Grp. LP v. Ethicon Endo–Surgery, Inc., 587 F.3d 1375, 1378 (Fed. Cir. 2009). Moreover, it is well-established that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975).

Here, the DOT to plaintiff's home was assigned to a series of successors-in-interest and lastly to defendant Clear Recon Corporation, which conveyed the property to third parties in an October 2017 foreclosure sale. "A deed of trust may . . . be assigned one or multiple times over the life of the loan it secures," the California Supreme Court has stated. "But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process. Only the true 'owner' . . . of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law." Yvanova v. New Century Mortgage Corp., 62 Cal. 4th 919, 927-928 (2016) (internal citations omitted). Plaintiff essentially argues that due to defective assignments, Clear Recon was not the true owner of the DOT at the time of sale.

Plaintiff's standing to sue on this basis turns on whether he is alleging "void" or "voidable" loan assignments. "A home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void." In re Turner, 859 F.3d 1145, 1149 (9th Cir. 2017), citing Yvanova, 62 Cal. 4th at 942-943. While a void contract is without legal effect and nonbinding, a voidable transaction, "[d]espite its defects, is subject to ratification by the parties." Yvanova, 62 Cal. 4th at 930 (citations omitted). "When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the

4

parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so," the Yvanova court reasoned. "A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself." Id. at 936. The California Supreme Court concluded that "a wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust," but the same does not apply to "claimed defects that would make the assignment merely voidable[.]" Id. at 939.

Thus the issue is whether plaintiff is alleging "void" or "voidable" loan assignments. Defendants cite Saterbak v. JPMorgan Chase Bank, N.A., 245 Cal. App. 4th 808, 814-815 (2016), a case in which Ms. Saterbak (like the instant plaintiff) contended that the DOT to her home was assigned in an untimely manner under the pooling and service agreement, rendering the loan assignment void. Id. at 814. The Saterbak court affirmed the dismissal of her complaint, concluding that the untimely assignment alleged by plaintiff was "merely voidable" and thus did not confer standing under Yvanova. Id. at 815. Similarly, the Ninth Circuit found that a plaintiff lacked standing to sue for wrongful foreclosure based on an alleged defect in the securitization process which rendered the assignment merely voidable. The Court reasoned:

> A borrower does have standing to challenge an assignment of her note and deed of trust on the basis of defects allegedly rendering the assignment void. Yvanova v. New Century Mortg. Corp., 62 Cal.4th 919 (2016). But because an act in violation of a trust agreement is voidable—not void—under New York law, which governs the Pooling and Servicing Agreement (PSA) at issue, Morgan lacks standing here. See Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 87–90 (2d Cir. 2014) (finding that "any failure to comply with the terms of the PSAs" did not render the "acquisition of plaintiffs' loans and mortgages void" because "[u]nder New York law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries").

Morgan v. Aurora Loan Services, LLC, 646 Fed. Appx. 546, **6-7 (9th Cir. March 28, 2016); see also Renard v. JP Morgan Chase Bank, N.A., 2017 WL 8292774, *8 (C.D. Cal. Dec. 13, 2017) (finding plaintiff lacked standing to challenge foreclosure based on defective assignment as "the

alleged untimely transfer of the Note to a securitized trust could make such a transfer voidable, not void.") (collecting cases). Based on the foregoing, plaintiff lacks standing to sue on the basis of the alleged defective loan assignments.

B. <u>Failure to State a Claim</u>

Separate from the issue of standing, defendants assert that "each of plaintiff's claims . . . is based on his self-serving conclusion that the Note was somehow separated from the Deed of Trust." (ECF No. 14-2 at 5; <u>see, e.g.</u>, Cmplt., ¶ 47 ("[I]f the Note and Deed of Trust are not together with the same entity, the Note cannot be enforced. The DOT is not valid without the note.").) "[M]any federal courts have rejected this position, applying California law. All have noted that the procedures to be followed in a nonjudicial foreclosure . . . do not require that the note be in the possession of the party initiating the foreclosure." <u>Debrunner v. Deutsche Bank Nat'l Trust Co.</u>, 204 Cal. App. 4th 433, 440 (2012); <u>see also</u> <u>Yvanova</u>, 62 Cal. 4th at 927 ("The deed of trust, moreover, is inseparable from the note it secures, and follows it even without a separate assignment."), citing Cal. Civ. Code § 2936. Thus any claims predicated on this alleged defect must fail.

Turning to the individual causes of action, the court considers whether plaintiff asserts one or more viable claims under the Rule 12(b)(6) standard. In his first cause of action, plaintiff asserts that defendants violated multiple provisions of the California Homeowner Bill of Rights ("HBOR") because, e.g., they "failed to offer [him] a suitable loan modification plan" and "failed to provide an adequate chain of title that would demonstrate their authority to proceed with a foreclosure[.]" (Cmplt., ¶¶ 128, 130.) Lacking specific factual support, these conclusory allegations are insufficient to state a claim. The court discusses plaintiff's other HBOR claims below.

The elements of plaintiff's second cause of action, negligence, are duty, breach, causation, and damages. <u>Ladd v. County of San Mateo</u>, 12 Cal. 4th 913, 917 (1996). Plaintiff asserts that defendants had a duty to exercise "reasonable care" and breached that duty by failing to abide by the terms of the PSA and properly securitize the loan. (Cmplt., ¶¶134, 136.) As a general rule, California courts have recognized that the relationship between a creditor and its debtor is arm's-

length, encompassing no special duties.  Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1093 n. 1 (1991).  Plaintiff alleges causation and injury in the most general terms.  Moreover, as discussed above, plaintiff lacks standing to pursue claims based on technical defects in the securitization process.  Thus, his second and eleventh causes of action, both based on negligence, fail to state a claim.

In his third cause of action, plaintiff seeks "the equitable remedy of restitution for unjust enrichment."  (Cmplt. ¶ 140.)  He asserts that defendants "were unjustly enriched by collecting monthly payments from Plaintiff when they had no interest in the Note."  (Id., ¶ 142.)  As this claim rests on the "defective assignment" theory which plaintiff lacks standing to pursue, it must fail.  Moreover, plaintiff's allegations of wrongdoing are conclusory and lacking in factual support.  The same can be said for plaintiff's fourth cause of action (slander of title, also based on the "defective assignment" theory); the fifth cause of action (cancellation of instrument, based on "invalid and void" assignments); and the ninth cause of action (accounting, based on the theory that due to defective assignments, plaintiff paid defendants money not "actually owed" them).

In his sixth cause of action, plaintiff asserts that defendants violated Cal. Civil Code § 2934, which provides for records of assignments of interest under a deed of trust.  Plaintiff alleges that a substitution of trustees in December 2016 was invalid, requiring the October 2017 foreclosure sale to be set aside.  (Cmplt., ¶¶ 156-157; see id., Exh. I at 115.)  The record documents the substitution of defendant Clear Recon as a successor trustee, acquiring the DOT from defendants Wilmington Savings Fund Society, Carlsbad Funding Mortgage Trust, and Rushmore Loan Management Services.  Plaintiff alleges that the latter defendants "were not legal beneficiaries or holders of the note," rendering the substitution invalid.  (Id., ¶ 156.)

"California courts have held that in order to state a claim challenging a foreclosure sale, it is not enough for plaintiff to allege that the purported assignment of the note in the assignment of deed of trust was ineffective. Instead, plaintiff is required to allege that defendant did not receive a valid assignment of the debt in any manner."  Diunugala v. JP Morgan Chase Bank, 2013 WL 5569737, at *8 (S.D. Cal. Oct. 3, 2013) (emphasis in original; internal quotations omitted), citing Fontenot v. Wells Fargo Bank, N.A., 198 Cal.App.4th 256, 271–72 (2011), overruled on other

7

grounds by Yvanova, 62 Cal. 4th 919. Here as in Diunugala, plaintiff "fails to allege sufficient facts indicating that [defendants] did not receive a valid assignment of the debt in any manner." Id. at *9 (emphasis in original). Even if the underlying assignment of the debt to Wilmington Savings, Carlsbad Funding, and/or Rushmore Loan was not shown by documents in the public record, such assignments are "commonly not recorded" in California. Howarth v. Everbank, 2016 WL 2621861, at *5 (C.D. Cal. March 25, 2016), quoting Fontenot, 198 Cal. App. 4th at 271-272. Rather, "[t]he lender could have readily assigned the promissory note . . . in an unrecorded document that was not disclosed to plaintiff." Fontenot, 198 Cal. App. 4th at 272. Here, plaintiff alleges no specific facts supporting his contention that the underlying assignment was invalid.

The seventh cause of action asserts in conclusory terms that defendants violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692f, by "illegally attempting to collect on Plaintiff's debt obligation" under false pretenses. (Cmplt., ¶¶ 158-159.) Such allegations are not sufficient to state a claim. Similarly, the eighth cause of action, asserting violations of Cal. Bus. And Prof. Code § 17200, rests on allegations that defendants "engaged in unfair, unlawful, and fraudulent business practices with respect to mortgage loan servicing" by various alleged means, all couched in general terms and unsupported by specific facts. (Id., ¶ 165.)

Plaintiff's tenth cause of action for fraud is premised on the allegedly defective assignment of the loan under the terms of PSA. For the reasons discussed above, including lack of standing, this claim must fail.

Causes of action twelve through fourteen allege violations of California's HBOR, some provisions of which were modified or replaced by new regulations in 2018. In the twelfth cause of action, plaintiff asserts that defendants violated Cal. Civil Code § 2923.6(c) because, while he was disputing the initial loan modification and trying to come to new terms, defendants recorded a Notice of Default and held a foreclosure sale in 2017. (Cmplt., ¶¶193-196.) The HBOR prohibits lenders from engaging in "dual tracking," which is the practice of advancing the foreclosure process while the borrower's application for a loan modification is pending review. Cal. Civ. Code § 2923.6(c). Section 2923.6(c) provides in relevant part that "[i]f a borrower

8

<u>submits a complete application</u> for a first lien loan modification . . . a mortgage servicer . . . shall not record a notice of default or notice of sale or conduct a trustee's sale, while the complete first lien loan modification application is pending." (Emphasis added.) Here, plaintiff alleges that, after his 2013 loan modification, he "requested a new loan modification" and defendants "had not resolved plaintiff's request" when they recorded a Notice of Default in January 2017. These allegations fail to state a claim under § 2923.6(c).

As to the thirteenth cause of action, § 2923.7 of the HBOR requires the provision of a single point of contact ("SPOC") in relation to a request for a mortgage modification. Plaintiff alleges that defendants failed to provide a SPOC; failed to coordinate the receipt of all his loan modification documents; and failed to communicate key deadlines and information, including that they were moving toward a foreclosure sale. (Cmplt., ¶¶ 198-204.) Plaintiff alleges that he was "provided with deficient information that prevented him from reasonably assessing his situation to avoid foreclosure at pivotal times when such information would have made a difference." (Id., ¶ 203.)

"The statutory language of § 2923.7 is plain that in order to trigger any obligation on the part of the mortgage servicer to establish a single point of contact, the borrower must first make a request for a foreclosure prevention alternative." <u>Taylor v. CitiMortgage, Inc.</u>, 2018 WL 3770532, at *2 (E.D. Cal. Aug. 8, 2018), citing, e.g., <u>Williams v. Wells Fargo Bank, NA</u>, 2014 WL 1568857, at *8 (C.D. Cal. Jan. 27, 2014) (affirming that § 2923.7 by its terms "requires that the borrower make a specific request for a single point of contact"). Plaintiff has not alleged any specific request. Moreover, "a violation of § 2923.7 is actionable only when that violation is material. A material violation is one where the alleged violation affected a plaintiff's loan obligations or the modification process." <u>Shupe v. Nationstar Mortgage LLC</u>, 231 F. Supp. 3d 597, 603 (E.D. Cal. Jan. 31, 2017), quoting <u>Cornejo v. Ocwen Loan Servicing</u>, LLC, 151 F.Supp.3d 1102, 1113 (E.D. Cal. 2015) (internal quotations omitted). Plaintiff fails to allege facts showing materiality under this standard.

Plaintiff's fourteenth and fifteenth causes of action consist of conclusory allegations that, insofar as they have not been addressed above, fail to state a claim. For the foregoing reasons,

9

defendants' motion to dismiss should be granted.

    IV.    Leave to Amend

    If the court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). Here, plaintiff will be granted an opportunity to amend the complaint.

    If plaintiff chooses to amend the complaint, plaintiff must set forth the jurisdictional grounds upon which the court's jurisdiction depends. Federal Rule of Civil Procedure 8(a). Further, plaintiff must demonstrate how the conduct complained of has resulted in a deprivation of plaintiff's rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).

    In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

    Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for notice of lis pendens (ECF No. 8) is denied;

    2. Defendants' motion to dismiss (ECF No. 14) is granted;

    3. The complaint is dismissed for failure to state a claim;

    4. Plaintiff is granted thirty days from the date of service of this order to file an amended

10

complaint that complies with the requirements of the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Amended Complaint"; failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed; and

5. The Initial Scheduling Conference set for December 12, 2018 is hereby vacated, to be reset as needed.

Dated: November 2, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / stewart1844.mtd_lta