| | |
|---|---|
| RUSSELL STEWART,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL FINANCE,<br>INC., et al.,<br><br>Defendants. | No. 2:18-cv-01844 KJM CKD (PS)<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, proceeding pro se and in forma pauperis, asserts claims against defendant financial entities relating to the foreclosure sale of real property at 256 Shilling Avenue in Lathrop, California. In November 2018, after a hearing on defendants' motion to dismiss, the undersigned dismissed the original complaint for failure to state a claim, granting leave to amend. Plaintiff filed the First Amended Complaint (FAC) one month later. (ECF No. 36.) Before the court is defendants' motion to dismiss the FAC, which is fully briefed. (ECF Nos. 38, 40, 43 & 44.)

On April 10, 2019, the undersigned held a hearing on defendants' motion to dismiss the FAC pursuant to Rule 12(b)(6). Plaintiff appeared pro se, and Brett Goodman and James Ramos appeared telephonically on behalf of defendants. At the close of the hearing, the court took the matter under submission.

////

////

I.       The First Amended Complaint

        The factual background to plaintff's claims is as follows[1]: In 2002, plaintiff executed a

loan agreement ("Loan") with defendant American General Finance in the amount of roughly

$142,000, secured with a Deed of Trust ("DOT") to the Shilling Avenue real property.  The DOT

was subsequently reassigned multiple times to defendant financial entities.  Between 2003 and

2017, plaintiff received five notices of default on the Loan.  In 2013, plaintiff entered a Loan

Modification Agreement with defendant Springleaf Financial Services.  He made payments under

the modified agreement before he disputed its terms and tried to amend it, but Springleaf never

agreed to a new modification.  In 2017, plaintiff was notified that he was again in default, and in

October 2017, nine months after the final Notice of Default, the property was sold to a third party

in a foreclosure sale.

        In the FAC, as in the original complaint, plaintiff alleges that the Loan was improperly

assigned and therefore unenforceable.  See, e.g., FAC ¶¶ 42, 48, 63.  The undersigned addressed

these allegations in the original complaint and found they failed to state a claim.  See ECF No. 32.

Insofar as the FAC is duplicative of the original complaint, it does not cure the deficiencies set

forth in the court's earlier order.

        The FAC goes into greater detail about plaintiff's attempt to obtain a second loan

modification after he concluded that the first one was based on inaccurate figures.  See FAC ¶ 83.

From late 2013 to January 2017, through multiple transfers of the Loan, plaintiff continued to

"dispute the accuracy of the balance due and request a modification of the 2013 Loan

Modification Agreement or a new Loan Modification Agreement."  Id., ¶ 89.  In January 2017,

the final holder of the Loan recorded a Notice of Default.  Id., ¶ 93; see id. at 138-140 (Plff's Exh.

O).  For the next three months, plaintiff continued his efforts to have the loan agreement

modified.  Id., ¶ 94.

                        On April 10, 2017, Rushmore [Loan Management Services] sent
                        plaintiff a letter acknowledging receipt of his home retention package
                        wherein he sought a loan modification and that it was a complete
                        package.   The letter was signed by Ms. Miranda Negrom of

_____

[1] See Order dated November 2, 2018, ECF No. 32 at 2-3.

1 Rushmore's Home Retention Department. . . .

2 In spite of the fact that Plaintiff had submitted a completed loan
modification application prior to April 10, 2017, on April 24, 2017,
3 Clear Recon, acting on behalf of Rushmore, Wilmington Savings
Fund, and Carlsbad Mortgage Trust, recorded a Notice of Trustee's
4 Sale in the public records of San Joaquin County Recorder's Office.

5 . . .

6 In spite of the fact that Defendants Rushmore, Clear Recon,
Wilmington Savings Fund and Carlsbad Mortgage Funding Trust
7 knew that Plaintiff's completed loan modification application was
pending, these defendants refused to rescind and/or revoke the
8 scheduled May 24, 2017 Trustee's Sale.

9 Id., ¶¶ 95-96, 98.

10 Plaintiff further alleges that, upon receiving the April 10, 2017 letter, he called Ms.

11 Negron.

12 She explained to Plaintiff that his file was transferred to her office
because she specialized in situations such as his loan was in. . . . She
13 said she clearly understood the problem and how it could be resolved
upon the completion of another loan modification application
14 package. Plaintiff promptly completed a new loan modification
application and forwarded it to her. After some time passed, Ms.
15 Negron informed Plaintiff that they had lost his loan modification
package in her office in Puerto [Rico] and that I had to submit another
16 such application package. . . . By this the time Ms. Negron revealed
this to Plaintiff, it was already the first week of May 2017.

17
. . .
18
On or about May 7, 2017, Plaintiff faxed in yet another loan
19 modification package with all the required supporting documentation
. . . On May 15, 2017, Plaintiff again spoke to Ms. Negron by phone.
20 She acknowledged receipt of the latest package, that she had
reviewed it, and that it was a 'completed package.' However, Ms.
21 Negron also stated . . . that they had seven days to consider and
review the latest package even further. Plaintiff . . . begged Ms.
22 Negron to immediately contact the necessary parties [to] call off the
Trustee's Sale scheduled for May 24, 2017. Her response was as
23 follows: "You black people from California get all this help and still
lose your homes." She then terminated the conversation and offered
24 no further assistance.

25 Id., ¶¶ 133-135.

26 While these allegations describe an impending May 24, 2017 trustee's sale, no such sale

27 occurred until October 11, 2017, nine months after the final Notice of Default. Id., ¶ 183.

28 Plaintiff alleges that defendants held the sale even though they had "not yet provided Plaintiff a

3

1    determination . . . of his request for a loan modification[.]"  Id.

2          Plaintiff also adds new claims of racial discrimination in the FAC.  In his second cause of

3    action, he asserts that Rushmore employees made racially discriminatory statements to him in

4    2015 and 2017[2], and that defendants violated the Unruh Civil Rights Act.  FAC ¶¶ 139-148.

5          II.     Motion to Dismiss

6          In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a

7    complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it

8    must contain factual allegations sufficient to "raise a right to relief above the speculative level."

9    Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  "The pleading must contain something

10   more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable

11   right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp.

12   235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter, accepted as true, to

13   'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

14   (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

15   factual content that allows the court to draw the reasonable inference that the defendant is liable

16   for the misconduct alleged."  Id.

17         A.  HBOR Claims

18         In his first cause of action, plaintiff claims defendants violated multiple provisions of the

19   California Homeowner's Bill of Rights (HBOR).  Section 2920.5 is definitional and does not

20   prohibit any conduct.  Nor does § 2923.4 ("Purpose of the Act") prohibit any conduct.  Thus any

21   claims pursuant to these sections must be dismissed.

22         Civ. Code § 2923.55 prohibits a mortgage lender/servicer from recording a Notice of

23   Default until it contacts the borrower to discuss alternatives to foreclosure.  The undersigned

24   takes judicial notice of defendants' Exhibit H, which includes a copy of a November 30, 2015

25   declaration of compliance with § 2923.55.  (Defs. Request for Judicial Notice, ECF No. 39-1 at

26

27   ---
     [2] In addition to Ms. Negron's alleged statements in 2017, plaintiff alleges that, in 2015, Rushmore
28   employee Byron Dean told him: "If all the black people in Texas had a program like you negroes
     have in California, my job would become useless."  FAC, ¶¶ 129, 142-143.

4

28-29.)  The declaration states that "the letter required by Civil Code § 2923.55(f)(3) was mailed on 5/7/15," and plaintiff alleges that less than two weeks later, he spoke to a Rushmore representative about possible alternatives to foreclosure.  FAC, ¶ 128.  Plaintiff alleges that, between May 2015 and May 2017, three Rushmore employees spoke with him about ways to prevent foreclosure: Byron Dean in Texas, Matt Kim in California, and Miranda Negron in Puerto Rico.  FAC, ¶¶ 132-136.  Based on the foregoing, plaintiff fails to state a claim under this section. See, e.g., Field v. Bank of America, N.A., 2015 WL 4647876, *4 (N.D. Cal. Aug. 5, 2015) (plaintiffs' allegations under § 2923.55 "are negated by their concessions that they were in modification discussions with [defendant] long before the NOD was recorded.") (collecting cases).

Civ. Code § 2924.17 requires that certain foreclosure notice declarations be "accurate and complete and supported by competent and reliable evidence."  Civ. Code § 2924(a)(6) prevents an entity from recording a Notice of Default "unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee . . . or the designated agent of the holder of the beneficial interest."  Aside from his theory that the DOT was improperly assigned, as discussed in the November 2018 order and found insufficient to state a claim, plaintiff has not alleged any facts showing that one or more defendants violated these sections.

In his seventh cause of action, plaintiff asserts an HBOR claim under Cal. Civil Code § 2923.6.  As stated in the order granting defendants' first motion to dismiss, the HBOR prohibits lenders from engaging in "dual tracking," which is the practice of advancing the foreclosure process while the borrower's application for a loan modification is pending review. Cal. Civ. Code § 2923.6(c).  Section 2923.6(c) provides in relevant part that "[i]f a borrower submits a complete application for a first lien loan modification  . . . a mortgage servicer . . . shall not record a notice of default or notice of sale or conduct a trustee's sale, while the complete first lien loan modification application is pending."  (Emphasis added.)

Here, plaintiff concedes that he received a "first lien modification" in 2013 and made payments pursuant to the new agreement before he "discovered discrepancies" in the agreement and sought a second modification.  FAC, ¶¶ 80-83.  Cal. Civil. Code § 2923.6(g) provides:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, <u>the mortgage servicer shall not be obligated to evaluate applications from borrowers who have been evaluated</u> or afforded a fair opportunity to be evaluated consistent with the requirements of this section, <u>unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.</u>

(Emphasis added.) As the FAC does not allege a "material change" in plaintiff's financial circumstances between his first loan modification and his application(s) for a second modification, warranting a new review under the HBOR, it does not plead a violation of this section.

In his eighth cause of action, plaintiff asserts a violation of Civil Code § 2923.7, which requires the provision of a single point of contact ("SPOC") in relation to a mortgage modification. Section 2923.7 provides in relevant part that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." The section defines a "single point of contact" as "an individual or team of personnel, each of whom has the ability and authority to perform the responsibilities described . . . " Cal. Civ. Code § 2923.7(e).

Plaintiff alleges that, on May 19, 2015, he "requested from Rushmore that they provide him with foreclosure prevention alternatives and a specific contact person to work with him to prevent foreclosure on the Property." FAC, ¶ 128. "Rushmore placed him in contact with Bryan Dean of their loss mitigation department. . . . Upon Plaintiff's initial telephone contact with Mr. Dean, they discussed Plaintiff's foreclosure prevention alternatives[.]" Id. Plaintiff spoke with Dean a second time and also discussed foreclosure prevention with two other Rushmore employees. Id., ¶¶ 129-135. His last such conversation was in May 2017, five months before the foreclosure sale. Id., ¶ 135.

"A violation of § 2923.7 is actionable only when that violation is material. A material violation is one where the alleged violation affected a plaintiff's loan obligations or the modification process." Shupe v. Nationstar Mortgage LLC, 231 F. Supp. 3d 597, 603 (E.D. Cal.

Jan. 31, 2017) (quotations and citation omitted). Here, because plaintiff has not cited a material financial change which entitled him to be reviewed for a second loan modification under the HBOR, he has not alleged that any violation of § 2923.7 was material. As the FAC does not sufficiently plead an HBOR claim, the above claims are subject to dismissal.

B. Racial Discrimination

In his second cause of action, plaintiff asserts that defendants discriminated against him in violation of the Unruh Civil Rights Act.

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Act provides for full and equal accommodations and services "in all business establishments of any kind whatsoever." Id. "[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination." Duronslet v. County of Los Angeles, 266 F. Supp. 3d 1213, 1217 (C.D. Cal. June 20, 2017), citing Harris v. Capital Growth Investors XIV, 52 Cal.3d 1142, 1175, (1991).

Here, while plaintiff alleges that two Rushmore representatives made racial comments in the course of discussing his foreclosure, the FAC does not allege that plaintiff was deprived of services or accommodations based on race. Nor does the FAC plead that any defendant intentionally discriminated against him in any specific way. Its conclusory assertion that "defendants deprived Plaintiff of the full and equal accommodations, advantages, privileges, and services of Rushmore and the other defendants named in this action" is too vague and conclusory to state a claim. See FAC ¶ 144. Thus plaintiff's Unruh Act claims are subject to dismissal.

C. Other State Claims

Plaintiff asserts the following additional state claims: intentional infliction of emotional distress (third cause of action); negligent infliction of emotional distress (fourth cause of action); violation of Cal. Business and Professions Code § 17200, et seq. (fifth cause of action); negligent processing (sixth cause of action); and quiet title (ninth cause of action).

1    "A cause of action for intentional infliction of emotional distress exists when there is (1)

2    extreme and outrageous conduct by the defendant with the intention of causing, or reckless

3    disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or

4    extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

5    the defendant's outrageous conduct." <u>Duronslet</u>, 266 F.Supp.3d at 1218, citing <u>Hughes v. Pair</u>,

6    46 Cal.4th 1035, 1050 (2009).  Plaintiff has pleaded no facts showing "extreme and outrageous"

7    conduct by any defendant, nor the elements of causation or harm.  Nor has plaintiff stated a claim

8    for negligence, for the reasons outlined in the order dismissing the original complaint.  <u>See</u> ECF

9    No. 32 at 6-7.

10    California's Business and Professions Code § 17200 broadly defines unfair competition to

11    include any business act or practice that is unlawful, unfair, or misleading. The Ninth Circuit has

12    observed that

13    
14    > § 17200 does not proscribe specific practices. Rather, ... it defines
    > "unfair competition" to include "any unlawful, unfair or fraudulent
    > business act or practice." ... Its coverage is "sweeping, embracing
    > anything that can properly be called a business practice and that at
15    > the same time is forbidden by law."

16    <u>Glenn K. Jackson Inc. v. Roe</u>, 273 F.3d 1192, 1203 (9th Cir. 2001) (quoting <u>Cel–Tech</u>

17    <u>Communications, Inc. v. Los Angeles Cellular Telephone Co.</u>, 20 Cal. 4th 163, 180 (1999) ).  A

18    UCL cause of action cannot be maintained if other causes of actions based on the same factual

19    allegations fail.  <u>Marcoss v. JPMorgan Chase Bank, N.A.</u>, 2019 WL 79015, *5 (Jan. 2, 2019)

20    (collecting cases).  Because plaintiff's HBOR and Unruh Act claims are subject to dismissal, his

21    UCL claim must also be dismissed.  <u>See id.</u>

22    Finally, the FAC does not allege the elements of a quiet title claim and should be

23    dismissed.  "Under California law, it is well-settled that a mortgagor cannot quiet his title against

24    the mortgagee without paying the debt secured. . . . Therefore, to maintain a quiet title claim, a

25    plaintiff is required to allege tender of the proceeds of the loan at the pleading stage." <u>Solano v.</u>

26    <u>America's Servicing Co.</u>, 2011 WL 4500874, *10 (E.D. Cal. Sept. 27, 2011) (citations omitted).

27    As plaintiff has had one opportunity to amend and it does not appear further amendment

28    would cure the pleading's defects, the FAC should be dismissed with prejudice for failure to state

8

1    a claim.

2           Accordingly, IT IS HEREBY RECOMMENDED that:

3           1.  Defendants' motion to dismiss the First Amended Complaint (ECF No. 38) be

4               granted; and

5           2.  This action be dismissed with prejudice for failure to state a claim.

6           These findings and recommendations are submitted to the United States District Judge

7    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

8    after being served with these findings and recommendations, plaintiff may file written objections

9    with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

11   failure to file objections within the specified time may waive the right to appeal the District

12   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

13    Dated:  April 11, 2019

14                                              _____
                                                CAROLYN K. DELANEY
15                                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21   2 / stewart1844.mtd_fr

22

23

24

25

26

27

28

                                              9